# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
June 23, 2016

Plaintiff-Appellee,

v

No.   325901
Oakland Circuit Court

TIMOTHY EUGENE HUBEL,

LC No.   2014-250227-FC

Defendant-Appellant.

Before:  M. J. KELLY, P.J., and CAVANAGH and K. F. KELLY, JJ.

PER CURIAM.

Defendant, Timothy Eugene Hubel, appeals by right his jury conviction of first-degree criminal sexual conduct.  MCL 750.520b(1)(a).  The trial court sentenced him to serve 25 to 60 years in prison for his conviction.  On appeal, Hubel argues that the trial court committed two evidentiary errors that independently warrant a new trial.  We conclude that there were no evidentiary errors warranting a new trial.  Accordingly, we affirm.

Hubel lived with the minor victim, BC, on and off for approximately five years.  Hubel is the father of BC's younger brother and lived with the siblings and BC's mother during their yearlong stay in Pontiac, Michigan.  One night while they were living in Pontiac, Hubel, BC, and BC's younger brother were watching television in the living room of their home.  While they were watching television, Hubel asked BC, who was eight years old at the time, to give him a back massage.  After the massage, Hubel put his head in BC's lap, pulled down her pants, and began performing oral sex on her.  BC ran upstairs to her bedroom.  She did not then tell her mother or anyone else about the incident.

A year later, while the family was living in Lapeer, Hubel asked BC to assist him with laundry in the basement.  After Hubel finished loading clothes, he exposed his penis to BC and masturbated.  While he was masturbating, Hubel grabbed BC's arm and attempted to get her to touch him.  BC resisted and ran upstairs.

The family moved to Missouri for three years before moving back to Michigan in December 2012.  Upon their return to Michigan, BC lived with her grandparents in Bloomfield Hills while her mother lived with friends and family in White Lake.  When her mother was able to get a home of her own in April 2013, she moved in with BC's brother and Hubel while BC continued to live in Bloomfield Hills for the remainder of the school year.

In May 2013, BC's mother went through Hubel's cell phone and saw multiple photographs of BC that she believed were inappropriate. She deleted the photos and called BC to ask if Hubel had ever acted inappropriately with her. At that point, BC revealed Hubel's sexual misconduct. BC's mother reported the incidents to police officers. She met with Detective Jody Kendrick and later gave Kendrick Hubel's phone so that officers could attempt to recover the deleted photographs. Despite two attempts, the crime lab was unable to recover any images.

Hubel first argues that the trial court violated his right to confront the witnesses against him when it allowed Kendrick to testify regarding the crime lab's results. Because Hubel's lawyer did not object to the testimony on this ground, our review is for plain error. *People v Buie*, 285 Mich App 401, 407; 775 NW2d 817 (2009). In order to warrant relief, Hubel must show that an error occurred, that the error was plain, i.e., clear or obvious, and that the plain error affected the outcome of the lower court proceedings. *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999).

An accused has a constitutional right to confront the witness against him or her. US Const, Am VI. This right applies to both federal and state prosecutions. *Crawford v Washington*, 541 US 36, 42; 124 S Ct 1354; 158 L Ed 2d 177 (2004). "Testimonial statements of witnesses absent from trial" are therefore admissible "only where the declarant is unavailable, and only where the defendant has had a prior opportunity to cross-examine" that declarant. *Id*. at 59. Whether a statement is testimonial depends on whether it is a "declaration or affirmation made for the purpose of establishing or proving some fact." *Id*. at 51. Traditional examples of testimonial statements include prior testimony at a preliminary hearing, before a grand jury, a previous trial, or in a police interrogation. *People v Lonsby*, 268 Mich App 375, 390; 707 NW2d 610 (2005). However, other pretrial statements "that the declarant would reasonably expect to be used in a prosecutorial manner, and statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial" are testimonial. *Id*. at 391 (quotation marks and citation omitted).

Hubel argues that Kendrick testified as to the conclusions of the crime lab technicians when she stated that, "sometimes you can recover deleted pictures, sometimes you can't . . . recover deleted pictures." While Hubel claims that Kendrick was testifying for the crime lab technicians, a review of the record demonstrates that she simply testified as to her own personal experiences with trying to recover lost photographs. Indeed, she gave the testimony after being asked why she was not concerned that the pictures from Hubel's phone were not recovered. Kendrick did not testify regarding any statements made by the technicians or about the contents of their reports. She simply explained that it is not uncommon for her to conduct an investigation even though important photographs have been deleted. On this record, the trial court did not plainly err when it allowed this testimony.

Hubel next argues that the trial court erred when it allowed BC to testify about the incident where he masturbated in her presence and tried to get her to touch his penis. More specifically, he argues that this evidence amounted to improper other acts evidence.

During a motion hearing regarding other acts evidence, the trial court noted that Hubel's lawyer did not dispute the admissibility of the laundry room incident in either of his answers to the prosecution's motions. The trial court stated, "So I'm going to assume that you don't dispute the admissibility of what happened with the laundry room, at least under the statute." Hubel's lawyer responded, "Judge, if she testifies to that, that's obviously a listed offense." By agreeing that the testimony regarding that incident involved a listed offense, Hubel's lawyer conceded that the testimony was admissible under MCL 768.27a. Consequently, Hubel's lawyer waived any claim of error with regard to the admission of that testimony. See *People v Carter*, 462 Mich 206, 215; 612 NW2d 144 (2000).

Nevertheless, a review of the record demonstrates that the trial court did not err in admitting this evidence. MCL 768.27a(1) provides that, "in a criminal case in which the defendant is accused of committing a listed offense against a minor, evidence that the defendant committed another listed offense against a minor is admissible and may be considered for its bearing on any matter to which it is relevant." A "listed offense" is one defined in section two of the sex offenders registration act. MCL 769.27a(2)(a).

Both the charged offense, first-degree criminal sexual conduct, and the offense sought to be introduced as other acts evidence, indecent exposure with a minor as a victim, MCL 750.335a(1),(2)(b), are listed offenses under the statute. MCL 28.722. While MRE 404(b) prohibits evidence of other acts to prove a defendant's propensity to commit a crime, the Michigan Supreme Court has held that MCL 769.27a supersedes MRE 404(b). *People v Watkins*, 491 Mich 450, 476-477; 818 NW2d 296 (2012).

Hubel does not contest that both the charged offense and his indecent exposure qualify as listed offenses under MCL 768.27a. Rather, he argues that evidence of the indecent exposure ought to have been excluded under MRE 403. MRE 403 provides that otherwise relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice." The Court in *Watkins* held that "when applying MRE 403 to evidence admissible under MCL 768.27a, courts must weigh the propensity inference in favor of the evidence's probative value rather than its prejudicial effect." *Watkins*, 491 Mich at 487. "To weigh the propensity inference derived from other-acts evidence in cases involving sexual misconduct against a minor on the prejudicial side of the balancing test would be to resurrect MRE 404(b), which the Legislature rejected in MCL 768.27a." *Id*. at 486.

Other acts evidence admissible under MCL 768.27a may still be excluded under MRE 403 as unfairly prejudicial. The Court in *Watkins* listed six factors in considering whether to exclude evidence as overly prejudicial: (1) the dissimilarity between the other acts and the charged crime, (2) the temporal proximity of the other acts to the charged crime, (3) the infrequency of the other acts, (4) the presence of intervening acts, (5) the lack of reliability of the evidence supporting the occurrence of the other acts, and (6) the lack of need for evidence beyond the complainant's and the defendant's testimony. *Id*. at 487-488.

While oral sex and indecent exposure are not identical conduct, the similarities outweighed the dissimilarities. The laundry room incident occurred within a year of the charged offense and permitted an inference that Hubel viewed BC as an object of sexual gratification. In addition to the proper propensity inference, evidence of the laundry room incident supported

BC's credibility and demonstrated Hubel's modus operandi when taking advantage of BC. In both incidents, he used the pretext of an innocent activity, a back massage and help with doing laundry, to place BC in a vulnerable position. Both acts likewise involved Hubel's use of paternal authority to get BC into a position where he could act on his sexual impulse. Finally, any prejudicial effect that BC's testimony had was curbed by the trial court's limiting instruction to the jury on how it should consider other acts evidence. *Id.* at 491. Therefore, the trial court's admission of other acts evidence was not plain error.

Although the trial court did not analyze MRE 403 before admitting the evidence, this was likely because Hubel had already conceded that it was admissible. In any event, any error in failing to consider MRE 403 was harmless because the evidence was plainly admissible even when considering MRE 403 and, accordingly, it does not "affirmatively appear that it is more probable than not that the error was outcome determinative." *People v Lukity*, 460 Mich 484, 496; 596 NW2d 607 (1999) (quotation marks and citation omitted).

There were no errors warranting a new trial.

Affirmed.

/s/ Michael J. Kelly
/s/ Mark J. Cavanagh
/s/ Kirsten Frank Kelly